IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNIVERSAL AMERICAN CORP.,<br><br>Plaintiff,<br><br>v.<br><br>PARTNERS HEALTHCARE SOLUTIONS HOLDINGS, L.P., GTCR GOLDER RAUNER II, L.L.C., GTCR PARTNERS IX, L.P., GTCR FUND IX/A, L.P., GTCR FUND IX/B, L.P., GTCR CO-INVEST III, L.P., DAVID KATZ, GREGORY SCOTT, JEROME VACCARO, and JOHN McDONOUGH,<br><br>Defendants. | Civil Action No. 13-1741-RGA |

## MEMORANDUM OPINION

Blake Rohrbacher, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Andrew J. Levander, Esq. (argued), DECHERT LLP, New York, NY; Linda C. Goldstein, Esq., DECHERT LLP, New York, NY; Paul C. Kingsbery, Esq., DECHERT LLP, New York, NY.

   Attorneys for Plaintiff Universal American Corp.

Jon E. Abramczyk, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Scott A. McMillin, Esq. (argued), KIRKLAND & ELLIS LLP, Chicago, IL; Richard U. S. Howell, Esq., KIRKLAND & ELLIS LLP, Chicago, IL.

   Attorneys for Defendants Partners Healthcare Solutions Holdings, L.P., *et al.*

July 24, 2014

*/s/ Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (D.I. 17) filed on December 23, 2013. The motion is fully briefed (D.I. 18, 21 & 26) and oral argument was held on May 23, 2014. For the reasons that follow, the Court will grant the Defendants' motion to dismiss Counts I-VI and VIII, with leave to amend.

## I. BACKGROUND

This dispute arises out of a merger between plaintiff Universal American Corporation ("Universal") and Partners Healthcare Solutions, Inc. ("APS"). Universal provides insurance and health benefits mainly to enrollees in the federal Medicare program. (D.I. 1, ¶ 22). APS offers specialty health care solutions that enable its customers, primarily state Medicaid agencies, to improve the quality of care and decrease costs. These services include case management and care coordination, clinical quality and utilization review, and behavioral health services. (*Id.*, ¶¶ 23-24).

APS's post-merger performance fell substantially short of both parties' expectations. Universal claims this was due to an organized fraud scheme, and Universal filed suit against the individuals and entities that it claims were in charge of APS. Prior to the merger, APS was a portfolio company of GTCR, a private equity firm. David Katz is a Managing Director of GTCR, which is the general partner of GTCR Co-Invest and GTCR Partners IX. GTCR Partners IX, in turn, is the general partner of GTCR Fund IX/A and GTCR Fund IX/B.[1] GTCR Co-Invest, GTCR Fund IX/A, and GTCR Fund IX/B are all limited partners of APSLP,[2] a Delaware limited partnership that was formed to hold APS. The leadership of APS was organized as

---

[1] The Complaint divides the defendants into three groups. The first group, comprised of all the GTCR funds and Katz, is referred to collectively as "the GTCR Defendants."

[2] APSLP, by itself, constitutes the second group of defendants.

1

follows: Gregory Scott served as the CEO, Jerome Vaccaro was the President and COO, and John McDonough acted as the CFO. (*Id.*, ¶¶ 13-15). McDonough, Scott, and Vaccaro[3] are all named defendants in this case, and served as limited partners of APSLP. Defendants Katz and Scott also sat on APS's five-member board.

Universal asserts nine counts ranging from securities fraud and common law fraud to aiding and abetting and unjust enrichment. The Defendants have moved to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted. (D.I. 17). Each count will be addressed in order.

## II. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the Complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

---

[3] Collectively, these three individuals are the third group, the "Individual Defendants."

2

line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III. DISCUSSION

### A. Securities Fraud Under Section 10(b) of the Exchange Act (Count I)

Universal alleges that APSLP and the Individual Defendants committed securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"). In order to state a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5, the plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191-92 (2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011)). Pursuant to Federal Rule of Civil Procedure 9(b), the above elements must be pled "with particularity," and, under the Private Securities Litigation Reform Act ("PSLRA"), the pled facts must give "rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253-54 (3d Cir. 2009); *see also In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."). For the reasons explained below, Count I is dismissed with leave to amend.

In contesting the sufficiency of Universal's federal securities claim, the Defendants raise two main arguments: that reliance cannot be proven because of the anti-reliance provision in the

Merger Agreement, and that the scienter of the Individual Defendants is not adequately pled. Federal securities fraud claims cannot be dismissed based solely on the presence of a contractual anti-reliance provision. Section 29(a) of the Exchange Act provides: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." 15 U.S.C. § 78cc(a). The Third Circuit has held Section 29(a) "forecloses anticipatory waivers of compliance with the duties imposed by Rule 10b-5." *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 180 (3d Cir. 2003) ("We believe the conclusion inescapable that enforcement of the non-reliance clauses to bar [the buyer's] fraud claims as a matter of law would be inconsistent with Section 29(a)."). Therefore, the Court rejects Defendants' contention that the anti-reliance provision in the merger agreement (D.I. 18-1 at 63-64) is an absolute bar to extra-contractual claims.

The anti-reliance provision also does not give rise to a heightened "reasonable reliance" pleading standard. The Third Circuit articulated a non-exclusive list of factors for determining whether a plaintiff acted reasonably in a Rule 10b-5 case: "Such matters as fiduciary relationship, opportunity to detect the fraud, sophistication of the plaintiff, the existence of long standing business or personal relationships, and access to the relevant information are all worthy of consideration." *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir. 1976). However, because "the failure to meet that standard is in the nature of an affirmative defense, the burden of proof rests upon the defendant." *Id.*

Defendants find support for a heightened pleading standard in the *AES Corp.* Court's statement that, "Clearly, a buyer in a non-reliance clause case will have to show more to justify its reliance than would a buyer in the absence of such a contractual provision." *AES Corp.*, 325

4

F.3d at 181. This is in reference to a disposition at the summary judgment stage, not a motion to dismiss. It is therefore dubious authority as to what is required at the pleading stage. I conclude that Universal is not required to satisfy a "reasonable reliance" standard at the pleading stage, as the Defendants suggest.[4]

Nonetheless, the Complaint as currently constituted is not pled with sufficient particularity to support a Section 10(b) claim. Universal is correct that the Complaint does contain some detailed factual allegations regarding each of the Individual Defendants. (D.I. 21, p. 19). However, there are examples where "APS," "Defendants," or the "Individual Defendants" are charged with certain knowledge or actions. (*See, e.g.*, D.I. 1, ¶ 36 ("[T]he Individual Defendants made a presentation . . . ."); *id.*, ¶ 45 ("Also around this time APS learned . . . ."); *id.*, ¶ 71 ("Defendants knew of these material adverse facts . . . .")). Therefore, Defendants' motion to dismiss is granted with leave to amend. The amended complaint should lay out, with particularity, each fraudulent statement or representation, its materiality, which specific defendant made the representation, when it was made, why it was false or misleading, scienter, and explain how Universal relied on it.

### B. Control Person Liability Under Section 20(a) of the Exchange Act (Count II)

Universal alleges control person liability under Section 20(a) of the Exchange Act against the GTCR Defendants. Section 20(a) of the Exchange Act provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person

---

[4] The Court is not suggesting that the anti-reliance provision is irrelevant to the issue of reasonableness, but rather that a motion to dismiss is not the appropriate juncture for this determination. *AES Corp.*, 325 F.3d at 180 ("[T]his is not to say that a plaintiff's declaration in a contract of an intent not to rely may not be evidence that he or she did not rely on representations of the defendants. That declaration, alone or in conjunction with other evidence of non-reliance, may establish an absence of reliance and, when unrebutted, may even provide a basis for summary judgment in the defendant's favor.").

5

>  acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Third Circuit requires that the defendant be "a culpable participant in the act or acts constituting the violation or cause of action" in order for secondary liability to attach under Section 20(a). *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013) (internal citations omitted). Section 20(a) liability can only be premised on inaction if the plaintiff proves both knowledge of the underlying fraud and that the inaction was "deliberate and done intentionally to further the fraud." *Id.* at 485.

As an initial matter, Universal has not waived its claims against the GTCR Defendants under the Limited Guaranty. Section 29(a) of the Exchange Act forbids such a waiver. *See AES Corp.*, 325 F.3d at 179-80.

Universal asserts Katz had "control" over APS because he was one of GTCR's appointed representatives on APS's five-person board and was necessarily a major player in its operations. (D.I. 21, p. 24). By virtue of his position, Universal alleges, Katz was aware of a misleading presentation given to Universal senior management (D.I. 1, ¶ 35), attended another meeting at which APS provided inaccurate business pipeline predictions (*id.*, ¶ 48), and played a role in reviewing and approving other incorrect presentations (*id.*, ¶ 110), among other things. These allegations are similar to those set forth in *Skeway*, where the plaintiff claimed the defendant had direct involvement in the day to day operations of the company, controlled the content and distribution of financial statements, and served on the company's Board of Directors and Audit Committee. *Skeway v. China Natural Gas, Inc.*, 2012 WL 2877645, at *1 (D. Del. July 6, 2012); *see also Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F. Supp. 2d 686, 707 (D. Del. 2010). I dismissed the plaintiff's claim in *Skeway* for failure to sufficiently allege control. Katz is not purported to have had primary responsibility for any of APS's operations, and I see

6

no factual allegations in the Complaint suggesting he was a "major player" in the sales effort. At best, the Complaint alleges Katz's knowledge of the misstatements made by APS's representatives. *See In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560-63 (D. Del. 2002). Therefore, the Defendants' motion to dismiss the Section 20(a) claim against Katz is granted with leave to amend. Universal should plead with particularity facts showing that Katz had primary responsibility for APS's overall management and day-to-day operations or was a "major player" in those operations.

The parties also dispute whether Universal must plead culpable participation and, if facts showing culpable participation are required, whether Universal has done so with respect to the GTCR Defendants. Notwithstanding the Third Circuit's recognition of a split among this Circuit's district courts on the issue,[5] in *Skeway* I followed a line of cases from this district requiring plaintiffs to plead culpable participation with particularity. *See, e.g., id.* at 561 ("[T]he heightened standard of the PSLRA requires that a claim under Section 20(a) state with particularity the circumstances of both the defendants' control of the primary violator, as well as of the defendants' culpability as controlling persons."); *Snowstorm Acquisition Corp.*, 739 F. Supp. 2d at 707. Nothing in the briefing or oral argument has changed my opinion.

Despite this pleading standard, the Court is satisfied that the Complaint contains adequate factual allegations against the GTCR funds. Universal has alleged both knowledge of the fraud and actions in furtherance of it on the part of the GTCR entities. For example, the Complaint states GTCR's agents attended key meetings with Universal representatives during which misleading and/or inaccurate information was given to Universal. (D.I. 1, ¶¶ 48, 55, 109). Universal also alleges GTCR personnel reviewed and approved presentations made to Universal

---

[5] *See Belmont*, 708 F.3d at 484 n.20.

that contained similarly incorrect information. (*Id.*, ¶ 110). Taking these facts as true, and viewing them in the light most favorable to the non-moving party, they are sufficient to state a claim for secondary liability under Section 20(a). However, because the underlying securities fraud claim is dismissed with leave to amend, this claim for secondary liability must be dismissed with leave to amend as well.

### C. Common Law Fraud (Counts III & V)

Universal asserts claims of fraud and fraud in the inducement against APSLP and the Individual Defendants. To state a claim for common law fraud, Universal must plead facts supporting an inference that: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *See Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). For the reasons that follow, all claims based on representations not found in either the Merger Agreement or the Officer's Certificate are dismissed with leave to amend under the *TransDigm* "omission" theory.

*Abry* clearly allows fraud claims based on representations contained in the Merger Agreement and the Officer's Certificate. It appears to the Court that those claims are properly alleged against APSLP and Scott, the APS representative who signed the Officer's Certificate. It is difficult to see how Vaccaro and McDonough, the other Individual Defendants who did not sign the Officer's Certificate, are implicated. Thus, the claims against Vaccaro and McDonough are dismissed.

8

...

...

The Defendants contend the anti-reliance provision bars Universal's reliance on any extra-contractual representations. Contracts that are the product of arms' length transactions, including those with anti-reliance provisions, are generally upheld under Delaware law, especially when the transaction involves sophisticated parties. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 142 n.18 (Del. Ch. 2003) ("The Court of Chancery has consistently held that sophisticated parties to negotiated commercial contracts may not reasonably rely on information that they contractually agreed did not form a part of the basis for their decision to contract."); *Abry*, 891 A.2d at 1058 ("To fail to enforce non-reliance clauses is not to promote a public policy against lying. Rather, it is to excuse a lie made by one contracting party in writing ... to enable it to prove that another party lied orally or in a writing outside the contract's four corners."). Section 3.34 of the Merger Agreement between Universal and APS contains an anti-reliance provision, which provides:

> WITHOUT LIMITING PARENT'S RECOURSE AS ELSEWHERE SET FORTH IN THIS AGREEMENT (OR ANY ANCILLARY AGREEMENT CONTEMPLATED HEREBY), EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY MADE BY THE COMPANY IN THIS <u>ARTICLE 3</u>, NONE OF APSLP, THE COMPANY OR ANY SUBSIDIARY OF THE COMPANY OR ANY APSLP RELATED PERSON HAS MADE OR AUTHORIZED THE MAKING OF ANY REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, CONCERNING THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NEITHER PARENT NOR THE MERGER SUB IS RELYING OR HAS RELIED ON ANY REPRESENTATIONS AND WARRANTIES *EXCEPT FOR THOSE EXPRESSLY MADE BY THE COMPANY IN THIS <u>ARTICLE 3</u> (OR THE CERTIFICATE DELIVERED PURSUANT TO <u>SECTION 6.2(h)(i)</u> OF THIS AGREEMENT)*.

(D.I. 18-1 at 64) (italic emphasis added). Through this provision, Universal expressly disclaimed its reliance on any representations or warranties except for those found in Article 3 of the Merger Agreement and the Officer's Certificate.

9

In response, Universal cites *TransDigm* to support its position that the anti-reliance provision disclaims only extra-contractual representations, not extra-contractual omissions. *TransDigm Inc v. Alcoa Global Fasteners, Inc.*, 2013 WL 2326881 (Del. Ch. May 29, 2013). In *TransDigm*, the Delaware Chancery Court denied a motion to dismiss a claim for fraudulent and active concealment based on an anti-reliance provision because the buyer did not disclaim reliance on extra-contractual omissions. *Id.* at *8. The court distinguished a Delaware Supreme Court case where the anti-reliance provision explicitly stated that "neither the Company nor any Company Representative is making any representation or warranty, express or implied, as to the *accuracy or completeness* of the Evaluation Material or of any other information concerning the Company provided or prepared by or for the Company." *Id.* (emphasis in original) ("There, the potential acquirer, RAA, expressly not only agreed that the selling company was making no representation or warranty as to the accuracy or completeness of any information being provided to RAA, but it also agreed that only representations the company might make in a later sale agreement would have any legal effect.").

Universal is permitted to amend its complaint because, similar to the contract in *TransDigm*, the language of Section 3.34 does not contain an express waiver with respect to the accuracy or completeness of the information provided by the Defendants. The *TransDigm* theory Universal seeks to pursue, however, is limited. Universal cannot circumvent *Abry*'s holding by arguing the Defendants neglected to inform Universal that its representations were false. Every misrepresentation, to some extent, involves an omission of the truth, and Universal cannot re-characterize every misrepresentation as an omission. Therefore, simply characterizing something as an "omission" does not render the anti-reliance provision a nullity. The Court's

10

discussion in *TransDigm* concentrated on "concealment." If Universal chooses to replead the fraud complaints, it would be well-advised to focus its allegations similarly.

### D. Breach of Contract (Count VII)

Universal alleges a breach of contract claim against APSLP and three of the GTCR funds: GTCR FUND IX/A, GTCR FUND IX/B, and GTCR Co-Invest. The Defendants' motion to dismiss raises two arguments. First, the Defendants assert the survival period for certain breach of contract claims have expired and are time-barred by the terms of the Merger Agreement. Second, the Defendants maintain Universal failed to adequately plead breaches of Section 3.16 and 3.17 of the Merger Agreement. Universal strenuously disagrees.

Both of these defenses involve contract interpretation by the Court, and therefore are more amenable to a determination at the summary judgment stage. The first issue requires the Court to interpret at what point the representations are time-barred and whether the notifications of breach given to APSLP contain overlapping claims such that the survival period for the claims is extended. The inquiry with respect to Section 3.16 necessitates a determination of whether the Merger Agreement permits the Company Disclosure Letter to expand the scope of APSLP's representations. For Section 3.17, the Court must decide whether APSLP knew any of its clients were in material breach, violation, or default, or whether any client had indicated its intent to cancel, terminate, or modify its contract with APSLP. Because these questions involve disputed issues of fact and contract interpretation not suitable to resolution on a motion to dismiss, the Defendants' motion is denied with respect to the breach of contract claims.

### E. The Remaining Claims (Counts IV, VI, VIII & IX)

The remaining counts did not receive serious attention in the briefing. Counts IV and VI allege aiding and abetting fraud and aiding and abetting fraud in the inducement against the

11

GTCR Defendants. Counts VIII and IX allege conspiracy to commit fraud and unjust enrichment against all three defendant groups. The claims for aiding and abetting and conspiracy are derivative and require an actionable common law fraud claim to survive. The common law fraud claims are dismissed with leave to amend, and therefore the aiding and abetting and conspiracy counts are dismissed with leave to amend as well. Although unjust enrichment sounds in equity and cannot be maintained simultaneously with a breach of contract claim, there is no reason not to allow Universal to plead it in the alternative at this stage of the proceeding.

## IV. CONCLUSION

For the reasons stated above, Counts I-VI and VIII are dismissed with leave to amend. An appropriate Order will follow.

12