**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNIVERSAL AMERICAN CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1741-RGA |
| | ) | |
| PARTNERS HEALTHCARE SOLUTIONS | ) | |
| HOLDINGS, L.P., GTCR GOLDER | ) | |
| RAUNER II, L.L.C., GTCR PARTNERS IX, | ) | |
| L.P., GTCR FUND IX/A, L.P., GTCR FUND | ) | |
| IX/B, L.P., GTCR CO-INVEST III, L.P., | ) | |
| DAVID KATZ, GREGORY SCOTT, | ) | |
| JEROME VACCARO and JOHN | ) | |
| McDONOUGH, | ) | |
| | ) | |
| Defendants. | ) | |

**UNIVERSAL'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR
LEAVE TO DEPOSIT DIVIDEND PAYMENTS INTO THE COURT REGISTRY**

Of Counsel:

Andrew J. Levander
Linda C. Goldstein
Rachel B. Swartz
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
212-698-3500
andrew.levander@dechert.com
linda.goldstein@dechert.com
rachel.swartz @dechert.com

Stuart T. Steinberg
Dechert LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104
215-994-4000
stuart.steinberg@dechert.com

Dated: November 12, 2015

Blake Rohrbacher (#4750)
Kelly E. Farnan (#4395)
Katharine C. Lester (#5629)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
302-651-7700
rohrbacher@rlf.com
farnan@rlf.com
lester@rlf.com

*Attorneys for Defendant Universal American
Corp.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT............................................................................................................................2

    I.          Universal Is Not Seeking Prejudgment Attachment. ...........................................2

    II.        Universal's Request to Deposit Funds Falls Squarely Within the
            Purpose of Rule 67 Because Ownership of the Dividend Payment
            Will Be Resolved in This Action. .......................................................................4

CONCLUSION...........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ArcelorMittal Cleveland Inc. v. Jewell Coke Co.*,
2010 WL 5158869 (N.D. Ohio Dec. 14, 2010) ...............................................................3, 4, 6

*AT&T Commc'ns of Cal. v. Pac-W. Telecomm, Inc.*,
2007 WL 1114037 (N.D. Cal. Apr. 13, 2007) .............................................................................6

*Baxter v. United Forest Prods. Co.*,
406 F.2d 1120 (8th Cir. 1969) ....................................................................................................7

*Brown v. Consol. Fisheries Co.*,
17 F.R.D. 86 (D. Del. 1954) ........................................................................................................3

*Canaday v. Superior Ct.*,
119 A.2d 347 (Del. 1955) ............................................................................................................2

*Dinkins v. General Aniline & Film Corp.*,
214 F. Supp. 281 (S.D.N.Y. 1963) ..............................................................................................7

*E.I. DuPont de Nemours & Co. v. HEM Research, Inc.*,
576 A.2d 635 (Del. Ch. 1989).....................................................................................................4

*Engineered Med. Sys., Inc. v. Despotis*,
2006 WL 1005024 (S.D. Ind. Apr. 14, 2006) .............................................................................6

*In re Estate of Beekhuis*,
1992 WL 5689 (Del. Ch. Jan. 13, 1992).....................................................................................4

*Gen. Pencil Co. v. George N. Kahn Co.*,
246 F. Supp. 60 (S.D.N.Y. 1965) ...............................................................................................7

*Gulf States Utils. Co. v. Ala. Power Co.*,
824 F.2d 1465 (5th Cir.), *amended on different grounds by*
831 F.2d 557 (5th Cir. 1987) ...................................................................................................2, 6

*John Julian Constr. Co. v. Monarch Builders, Inc.*,
306 A.2d 29 (Del. Super. Ct. 1973) .........................................................................................3, 4

*Kansas City S. Ry. Co. v. Borrowman*,
2009 WL 3188305 (C.D. Ill. Sept. 30, 2009) .............................................................................6

*Penn Mutual Life Insurance Co. v. Norma Espinosa 2007-1 Insurance Trust*,
70 F. Supp. 3d 628 (D. Del. 2014).......................................................................................1, 4, 5

*Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*,
  680 F. Supp. 2d 639 (D. Del. 2010).................................................................................3, 6, 7

*Quests, Ltd. v. Kollins*,
  1993 WL 189502 (Del. Super. Ct. May 10, 1993) ...................................................................3

*Qwest Corp. v. Elephant Butte Irrigation Dist.*,
  2007 WL 2258281 (D.N.M. Aug. 3, 2007) .............................................................................6

*United Indus. Corp. v. Nuclear Corp. of Am.*,
  237 F. Supp. 971 (D. Del. 1964)..............................................................................................3

*Uragami v. Century Int'l Credit Corp.*,
  1997 WL 33175027 (Del. Ch. Dec. 2, 1997).........................................................................3

RULES

Fed. R. Civ. P. 67 Advisory Committee Notes (1983) ...................................................................7


OTHER AUTHORITIES

Letter from Chairman, Advisory Committee on Civil Rules to Standing
  Committee on Rules of Practice and Procedure dated March 9, 1982,
  published in 97 F.R.D. 165 ...............................................................................................1, 4

D. Del. Form Deposit Order (last revised Apr. 29, 2013),
  http://www.ded.uscourts.gov/sites/default/files/forms/Deposit-Order-CRIS-
  v042913.pdf .......................................................................................................................7, 8

United States Department of Treasury Bureau of the Public Debt Office of Public
  Debt Accounting, Daily Principal Outstanding Detail Summary 10/30/2015,
  *available at*
  http://www.treasurydirect.gov/govt/reports/fip/podr/dfi_prin_20151030.pdf..........................8

Court Management, Financial Systems, and Statistical Reporting - Annual Report
  2013, http://www.uscourts.gov/statistics-reports/court-management-financial-
  systems-and-statistical-reporting-annual-report-2013
  (last visited Nov. 11, 2015).......................................................................................................8

Defendants' opposition papers are built on two distortions of Universal's Rule 67 motion.

The first is that the dividends that are the subject of this motion "are not the 'disputed fund' at issue in this lawsuit." D.I. 66 at 9. Defendants have ignored the crucial paragraphs of the Amended Complaint asking this Court to "impose a constructive trust in favor of Universal on the Universal shares obtained by each of the Defendants, and upon all proceeds derived therefrom, *including dividend payments received by the Defendants* as owners or beneficial owners of Universal shares." D.I. 39 ¶ 262 (emphasis added). This claim is not "incidentally implicated" in Universal's lawsuit, as Defendants assert. D.I. 66 at 9. Rather, it is part of Universal's core allegation that "Defendants obtained their Universal shares *and dividend payments* through fraudulent, unfair, and unconscionable conduct." D.I. 39 ¶ 260 (emphasis added). Because the dividends are themselves in dispute, Defendants' contention that this motion is "an improper prejudgment attachment" has no factual basis. D.I. 66 at 4.

The second is that Rule 67 applies only to three "circumstances"—interpleader,[1] *in rem* admiralty actions, and offers of settlement. D.I. 66 at 8. None of these limitations appears in the text of Rule 67, which was amended in 1983 to "facilitate deposits of money in court by *broadening* parties' power to do so." Letter from Chairman, Advisory Committee on Civil Rules to Standing Committee on Rules of Practice and Procedure dated March 9, 1982, published in 97 F.R.D. 165, 190 (emphasis added). In *Penn Mutual Life Insurance Co. v. Norma Espinosa 2007-1 Insurance Trust*, 70 F. Supp. 3d 628, 631-32 (D. Del. 2014), this Court accepted the plaintiff insurance company's $7 million deposit, which did not fall within any of these three "circumstances." Other courts, including the Fifth Circuit, agree that a party may seek to

---

[1] In reality, the effect of Universal's motion is the same as if Universal had delivered funds for payment of the dividends to Universal's transfer agent and the transfer agent sought to deposit the funds into Court through an interpleader. Even under Defendants' cramped reading of Rule 67, such a deposit would be permissible.

preserve its own claim to a sum whose ownership is in dispute by means of Rule 67.  *See, e.g.,*
*Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1474 (5th Cir.), *amended on different*
*grounds by* 831 F.2d 557 (5th Cir. 1987).

Defendants also twist the facts to suggest that Universal has waived its right to seek relief
under Rule 67 because it paid dividends to Defendants twice in the past.  D.I. 66 at 3.  Both of
those dividends were paid *before* this action was filed on October 22, 2013, when relief under
Rule 67 was not yet available to Universal.  Neither this nor any of Defendants' other distortions
of the record is a proper basis for denying Universal's motion to deposit the disputed dividends
with the Court.

## ARGUMENT

### I.     Universal Is Not Seeking Prejudgment Attachment.

Defendants try to avoid Universal's garden-variety application of Rule 67 by
misconstruing the relief sought.  Universal seeks to deposit funds into the Court under Rule 67,
but Defendants argue that Universal is instead secretly seeking prejudgment attachment under
Rule 64.

Defendants simply misunderstand attachment, which under Delaware law is a mechanism
"to coerce a non-resident defendant who owns property within the State into submitting to
personal jurisdiction upon pain of forfeiture of his seized property."  *Canaday v. Superior Ct.*,
119 A.2d 347, 350 (Del. 1955).  Further, if the defendant does not appear to defend the suit, the
defendant's "seized property [is] sold to satisfy the judgment."  *Id.* at 351.

Here, neither aspect of attachment is present.  Universal does not seek to compel
Defendants' appearance in Court, since Defendants themselves concede that they are properly
before this Court.  D.I. 66 at 7 n.4.  More importantly, Universal does not seek to seize

2

Defendants' assets to secure an eventual judgment.[2]  Defendants argue that Universal is seeking attachment because Universal hopes to safeguard the dividend payments.  D.I. 66 at 6.  But as Universal made clear in its motion and in its Amended Complaint, the basis for this motion is that ownership of the shares (and of the dividends payable on those shares) is an issue for resolution in this action.  *See, e.g.*, D.I. 39 ¶¶ 257-62.  The dividends in question are not a source of payment for the damages to which Universal would be entitled once it establishes the Defendants' fraudulent misrepresentations.  Rather, Universal's success in this action will result in a declaration that it owns the dividends and the award of a constructive trust over those dividends.  *See, e.g.*, D.I. 39 ¶¶ 257-62.  Accordingly, Universal does not seek attachment of the dividends to satisfy any judgment—the dividends themselves are part of the relief to which Universal is entitled.

None of Defendants' cases is applicable here,[3] and the unpublished *ArcelorMittal* case on which they rely so heavily (D.I. 66 at 5-6) is particularly inapposite.  In *ArcelorMittal*, the

---

[2]  It is true that Universal cited an opinion from this Court for the proposition that Rule 67 is a "procedural device to provide a place of safekeeping for disputed funds," *Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*, 680 F. Supp. 2d 639, 641 (D. Del. 2010), cited in D.I. 63 at 4.  But that protective aspect of Rule 67 does not transform Universal's motion under Rule 67 into one under Rule 64, because ownership of the dividends is actually at issue before this Court.  *See* D.I. 63 at 2, 3, 4, 5-6, 7.

[3]  *See, e.g.*, *United Indus. Corp. v. Nuclear Corp. of Am.*, 237 F. Supp. 971, 983 (D. Del. 1964) (vacating attachment because personal service of the defendants was authorized and possible under Section 27 of the Securities Act); *Quests, Ltd. v. Kollins*, 1993 WL 189502 (Del. Super. Ct. May 10, 1993) (quashing writ of foreign attachment where the requirement that the defendant "cannot be found" was not met); *Brown v. Consol. Fisheries Co.*, 17 F.R.D. 86 (D. Del. 1954) (denying the plaintiff's motion for issuance of attachment binding property of the defendant pending disposition of the case where it did not appear that the defendant had absconded or otherwise made himself unavailable for service of ordinary process); *Uragami v. Century Int'l Credit Corp.*, 1997 WL 33175027, at *2 (Del. Ch. Dec. 2, 1997) (denying the plaintiff's motion for a writ of foreign attachment to prevent her former employer from dissipating assets, because the court lacked the authority to freeze assets to make them available to plaintiff for a possible future monetary judgment she might obtain if she prevailed on her sex discrimination claims against the company); *John Julian Constr. Co. v. Monarch Builders, Inc.*,

3

plaintiffs sought to reform a contract with the defendant under which the plaintiffs paid the defendant for delivering blast furnace coke. *ArcelorMittal Cleveland Inc. v. Jewell Coke Co.*, 2010 WL 5158869, at *2 (N.D. Ohio Dec. 14, 2010). The plaintiffs in that case were "trying to attach money that is owed to [defendant] under the contract as currently written"; that is, plaintiffs wanted to force the defendant to continue delivering coke, while a portion of the payment for the coke would be deposited with the Court. *Id.* In other words, the plaintiffs did not dispute that the defendant was entitled to some consideration, but they wanted to force the defendant to continue delivering coke without having to pay the defendant the full amount called for by the contract.

Here, by contrast, the very ownership of the dividends (and the underlying shares) is in dispute, and Defendants are not being forced to comply with half of a contractual bargain. In other words, this situation is very much like *Penn Mutual*, where this Court allowed the plaintiff to deposit the $7 million in proceeds of a life insurance policy into the Court Registry under Rule 67 because the validity of the underlying policy was at issue. *Penn Mut.*, 70 F. Supp. 3d 628.

## II. Universal's Request to Deposit Funds Falls Squarely Within the Purpose of Rule 67 Because Ownership of the Dividend Payment Will Be Resolved in This Action.

In 1983, Rule 67 was amended to "facilitate deposits of money in court by broadening parties' power to do so." Advisory Committee Letter, 97 F.R.D. at 190. Previously, Rule 67 had said that:

---

306 A.2d 29, 33 (Del. Super. Ct. 1973) (denying garnishees' motion for summary judgment in a post-judgment attachment case because disputed facts remained as to whether the garnishees assumed the corporation's debt to the plaintiff upon liquidation); *In re Estate of Beekhuis*, 1992 WL 5689 (Del. Ch. Jan. 13, 1992) (dismissing claim for constructive trust over an estate that was not the subject of the underlying action); *E.I. DuPont de Nemours & Co. v. HEM Research, Inc.*, 576 A.2d 635, 639 n.2 (Del. Ch. 1989) (denying injunctive relief sought to obtain satisfaction of any eventual judgment for rescissory damages, noting that the complaint set forth no claim of entitlement to the assets sought to be enjoined).

4

> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing.

*See id.* at 225.

The 1983 amendment added that a party could seek to make a Rule 67 deposit "whether or not that party claims all or any part of the sum or thing," making it clear that parties that, like Universal, *do* have a claim to a disputed fund may seek relief under Rule 67.

Defendants suggest that Rule 67 is not available here because that would permit Universal to avoid having to "deal with the consequences of refusing to make dividend payments."[4]  D.I. 66 at 8.  While Defendants never spell out what those alleged "consequences" might be, this Court rejected that very argument when made by the defendants in *Penn Mutual*. There, just like here, the defendants urged that the plaintiff was "'attempt[ing] to use Rule 67 of the Federal Rules of Civil Procedure to insulate itself from the consequences of its breach of contract.'"  70 F. Supp. 3d at 632.  The Court noted that it would address "[t]he impact, if any," of the plaintiff insurance company's willingness to pay the disputed insurance proceeds into Court "at a later stage" of the case and held that it would be "an appropriate exercise of its discretion" to allow those funds to be paid into the Court.  *Id*.  The order was made so as to "ensure that the proceeds are available to be paid to whichever is the proper party at the conclusion of th[e] case," the very reason Universal seeks to deposit the funds here.  *Id*. Defendants are unable to distinguish *Penn Mutual*'s holding that Rule 67 is applicable where the action will be "decisive in demonstrating to whom the deposited funds should be paid or returned."  *Id*. at 631.

---

[4] Universal is not avoiding any such "consequences."  Indeed, Universal set up a separate account to receive the disputed dividend payments because Defendants refused to agree to the establishment of an escrow for those payments.

Elsewhere, courts across the country acknowledge that "[u]nder the plain language of Rule 67, the circumstances in which a party might be allowed to deposit money with the court are quite broad, as long as the money is truly in dispute." *Engineered Med. Sys., Inc. v. Despotis*, 2006 WL 1005024, at *3 (S.D. Ind. Apr. 14, 2006) (holding that the portion of royalty payments arguably in excess of those owed under the parties' licensing agreement were "truly in dispute" and could be deposited, but that the undisputed portions of the royalty payments could not).  In *Gulf States*, the Fifth Circuit held that where plaintiff claimed its contract to buy electricity from defendant should be set aside, the funds otherwise due under the contract were "genuinely [] in dispute" and therefore correctly deposited pursuant to Rule 67.  *Gulf States Utils. Co.*, 824 F.2d at 1475; *see also Qwest Corp. v. Elephant Butte Irrigation Dist.*, 2007 WL 2258281, at *1 (D.N.M. Aug. 3, 2007) (permitting telecommunications provider plaintiff to deposit with the court land use fees it claimed were improperly charged by defendant irrigation district); *AT&T Commc'ns of Cal. v. Pac-W. Telecomm, Inc.*, 2007 WL 1114037, at *1 (N.D. Cal. Apr. 13, 2007) (allowing Rule 67 deposit of internet service provider tariff where validity of tariff for traffic originating on plaintiff's network would be decided by court); *Kansas City S. Ry. Co. v. Borrowman*, 2009 WL 3188305, at *6 (C.D. Ill. Sept. 30, 2009) (holding that plaintiffs were permitted to deposit with the court money allegedly owed to defendants under assessments plaintiffs disputed).

Defendants' reliance on *ArcelorMittal* and *Progressive* is misplaced because the "contract" for payment of dividends is non-executory.  In *ArcelorMittal*, the defendants would be prejudiced by a deposit with the court because they would lose the ability to declare the contract in breach and deliver the coke to another buyer willing to pay the full price.  2010 WL 5158869, at *1-2.  That case has no bearing here, because Defendants point to no prejudice by having the

6

Court hold the cash dividends until the Court decides to whom they are properly payable. Similarly, in *Progressive*, unlike here, plaintiffs admitted seeking to use Rule 67 to "avoid any potential breach" of contract, and there was no claim for constructive trust placing actual ownership of the funds sought to be deposited at issue. *Progressive*, 680 F. Supp. 2d at 640.[5]

Defendants also contend that Universal seeks to "rewrite the parties' carefully negotiated contracts." D.I. 66 at 1. However, there is no contract governing the payment of dividends with respect to the 5,306,198 Universal shares in the possession of Partners Healthcare Solutions Holdings, L.P. ("APSLP") and there is no contract governing the payment of dividends with respect to the 265,846 shares held by the individual defendants. The Escrow Agreement applies only to the 700,060 shares held by the Escrow Agent. Universal is willing to pay dividends on those shares to the Escrow Agent rather than to the Court, if APSLP prefers; however, the Escrow Agreement has no bearing on the other 5,572,044 shares held by the Defendants themselves.

Finally, Defendants suggest that this Court should refrain from exercising its authority to hold the disputed funds during the pendency of this litigation for fear of imposing an "unnecessary burden upon the clerk of the court," D.I. 66 at 12. That solicitude is misplaced, because the "Clerk of the Court [would] deposit the funds into The United States Treasury to be invested in The Court Registry Investment System ("CRIS")." D. Del. Form Deposit Order (last

---

[5] Defendants' reliance on cases decided before the 1983 amendment to Rule 67 broadened the Rule's scope is also unavailing. The 1983 amendment specifically overruled *Dinkins v. General Aniline & Film Corp.*, 214 F. Supp. 281 (S.D.N.Y. 1963), which had prohibited litigants who "continue to claim an interest" in the sum being deposited from using Rule 67. *See* Fed. R. Civ. P. 67 Advisory Committee Notes (1983). The cases cited by Defendants that expressly rely on *Dinkins* are no longer good law. *See, e.g.*, *Gen. Pencil Co. v. George N. Kahn Co.*, 246 F. Supp. 60 (S.D.N.Y. 1965) (relying on *Dinkins* to deny motion to deposit where plaintiff claimed continued interest in the sum); *Baxter v. United Forest Prods. Co.*, 406 F.2d 1120 (8th Cir. 1969) (same).

revised Apr. 29, 2013), http://www.ded.uscourts.gov/sites/default/files/forms/Deposit-Order-CRIS-v042913.pdf. Universal has adhered to this procedure in its proposed order. CRIS has more than ample capacity to manage the $4.5 million at issue on this motion, as well as any future dividends that Universal may declare. As of October 2015 CRIS managed over $1.9 billion. United States Department of Treasury Bureau of the Public Debt Office of Public Debt Accounting, Daily Principal Outstanding Detail Summary 10/30/2015, *available at* http://www.treasurydirect.gov/govt/reports/fip/podr/dfi_prin_20151030.pdf. These funds were held on behalf of at least "98 courts in more than 3,300 cases." Court Management, Financial Systems, and Statistical Reporting - Annual Report 2013, http://www.uscourts.gov/statistics-reports/court-management-financial-systems-and-statistical-reporting-annual-report-2013    (last visited Nov. 11, 2015).

The dividends at issue on this motion are the first dividends that Universal has declared since this lawsuit was filed. Universal has properly invoked Rule 67 so that the Court may hold the dividends declared by Universal until the Court determines Universal's unjust enrichment claim. Placing the dividend payment in the Court Registry will not prejudice Defendants in any way other than the potential delay in the receipt of their dividend. Equity should prevail here. If the dividend is paid to Defendants, Universal and its stockholders could suffer harm should Universal ultimately prevail on Count XIV, for Defendants may be unable to return the dividends that properly belong to Universal. On the other hand, if the Defendants prevail, Defendants will have suffered no harm when the funds held in the Court Registry are paid to them at the conclusion of this matter.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in Universal's moving papers, Universal's request for an Order permitting it to deposit the disputed October 26, 2015 dividend payment into the Court Registry should be granted.


Of Counsel:

Andrew J. Levander
Linda C. Goldstein
Rachel B. Swartz
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
212-698-3500
andrew.levander@dechert.com
linda.goldstein@dechert.com
rachel.swartz @dechert.com

Stuart T. Steinberg
Dechert LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104
215-994-4000
stuart.steinberg@dechert.com

Dated: November 12, 2015

*/s/ Blake Rohrbacher*
Blake Rohrbacher (#4750)
Kelly E. Farnan (#4395)
Katharine C. Lester (#5629)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
302-651-7700
rohrbacher@rlf.com
farnan@rlf.com
lester@rlf.com

*Attorneys for Defendant Universal American Corp.*

9