```
 1                  UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF DELAWARE
 3
 4       UNIVERSAL AMERICAN CORP.,     :   CA NO. 13-1741-RGA
 5                                     :
 6                  Plaintiff,         :
 7                                     :
 8           v.                        :   June 1, 2016
 9                                     :
10       PARTNERS HEALTHCARE           :
11       SOLUTIONS HOLDINGS LP, et     :
12       al.,                          :
13                                     :
14                  Defendants.        :   2:00 o'clock p.m.
15       ............................:
16
17             TRANSCRIPT OF SCHEDULING CONFERENCE
18           BEFORE THE HONORABLE RICHARD G. ANDREWS
19                  UNITED STATES DISTRICT JUDGE
20
21
22       APPEARANCES:
23
24       For Plaintiff:    RICHARDS, LAYTON & FINGER
25                         BY:  KELLY E. FARNAN, ESQ
```

```
 1                           BY:  BLAKE RORHBACHER, ESQ
 2                                    -and-
 3                           DECHERT LLP
 4                           BY:  LINDA C. GOLDSTEIN, ESQ
 5                           BY:  PAUL C. KINGSBERY, ESQ
 6
 7
 8    For Defendants:        MORRIS, NICHOLS, ARSHT & TUNNELL
 9                           BY:  JON E. ABRAMCZYK, ESQ
10                           BY:  RYAN D. STOTTMAN, ESQ
11                                    -and-
12                           KIRKLAND & ELLIS LLP
13                           BY:  SCOTT A. MCMILLIN ESQ
14
15
16
17
18
19
20
21
22    Court Reporter:        LEONARD A. DIBBS
23                           Official Court Reporter
24
25
```

```
1                    P R O C E E D I N G S
2
3              (The proceedings occurred at 2:00 o'clock p.m. as
4    follows:)
5              THE COURT:  All right.  Please be seated.
6    This is Universal American v. Partners Healthcare Solutions
7    Holdings, Civil Action No. 13-1741.
8              Ms. Farnan.
9              MS. FARNAN:  Good afternoon, your Honor.
10             MS. GOLDSTEIN:  Good afternoon.
11             MR. MCMILLIN:  Good afternoon.
12             THE COURT:  I'll call on Ms. Farnan, because she's the
13   only person I know here, not counting my staff.
14             Ms. Farnan, what are we doing here?
15             MS. FARNAN:  Your Honor, we're here for a Rule 16
16   Conference.  I'm here on behalf of the plaintiff, your Honor.
17             I'm with Blake Rorhbacher of my office.  And also
18   co-counsel from Dechert is Linda Goldstein.
19             MS. GOLDSTEIN:  Good afternoon, your Honor.
20             MS. FARNAN:  Stuart Steinberg.
21             MR. STEINBERG:  Good afternoon.
22             MS. FARNAN:  And next to me is Paul Kingsbery.
23             MR. KINGSBERY:  Good afternoon.
24             THE COURT:  All right.
25             Well, good afternoon to all of you.
```

1               MR. ABRAMCZYK:  Good afternoon.

2               I'm Jon Abramczyk from Morris Nichols.

3               Ryan Stottman, my colleague, as well as Scott McMillin

4     from Kirkland & Ellis.

5               THE COURT:  I've seen Mr. McMillin before.

6               All right.

7               So I got the Proposed Order.  What I thought we should

8     do is pick the dates that involve me, resolve the various little

9     issues that you have in here, and you all can fill in the dates

10    that don't involve me.

11              So how about a trial on March 12th of 2018?

12              As you probably have been warned, put it down for five

13    days, and we'll see what we can fit into that time.

14              The Pretrial Conference will be March 2 of 2018 at 8:30

15    a.m.

16              In terms of the Case Dispositive Motions, I don't

17    really care about what the date is, but basically any -- you

18    know, normally I don't do Case Dispositive Motions on bench

19    trials.  It's quicker to do the trial.

20              But you can file as many as Case Dispositive Motions,

21    or Daubert Motions as you want, but you're limited to one 20

22    page opening brief for each side.  If you file a motion or

23    whatever you do.  So it would be 20, 20, and ten.

24              One thing I would like you to do, and you can work out

25    the details is, before the Pretrial Conference, I'd like with

1      the Pretrial Order for you to submit proposed findings of fact.
2              And what I have in mind -- what I've done some in
3      similar cases is that what I would like is to have an iterative
4      process where the plaintiff --
5              MS. GOLDSTEIN:  This way.
6              THE COURT:  You're the plaintiff?
7              MS. GOLDSTEIN:  Yes.
8              THE COURT:  Okay.
9              Maybe I haven't seen you before.
10             MR. MCMILLIN:  I argued the Motion to Dismiss, so I was
11     in front of you a couple of times on that.
12             THE COURT:  But you went first.  That's the reason why
13     I thought you were the plaintiff.
14             Okay.  All right.
15             Well, in any event, so the plaintiff does up some
16     number of findings of fact, which are like one sentence each.
17     They're numbered from 1 to X, Y, Z.
18             If you have a document that is the source of the fact,
19     you know, cite Plaintiff's Exhibit 45.  If it is expected,
20     something you expect to prove through testimony, you can just,
21     you know, put a T for testimony.  And if you are feeling up to
22     it, you can put which witness is going to do it, but that's not
23     required.
24             But then after you go through, you send over this to
25     the defendant who's represented by Mr. McMillin, and he's

1   supposed to respond to your findings of fact with either agreed
2   or denied, but be specific about what the denial is.  It's not
3   just good enough to say "Denied," unless they say, your clients
4   all operated with fraudulent intent.  You can probably just say
5   "Denied" to that.  But the idea here is to really actually
6   figure out what's in dispute.
7           And, so, then you get to not only respond to theirs,
8   but then to propose some findings of fact of your own.
9           MR. MCMILLIN:  Okay.
10          THE COURT:  Which you can either do after theirs, or if
11  there's logical places where you want to interlineate them in,
12  and then you can follow their Finding 66.  You can call yours
13  66-A or something like that.
14          And then, after you've done that, they get a chance not
15  to reply to your answers, but to respond to what the new things
16  you've raised.
17          So basically each finding of fact.  One side has
18  proposed it and one side is responding to it.
19          And one of things I struggled on when I've done this
20  before is to try to figure out what's the fair division, because
21  they have to go first.  And, so, you know, if they write 60
22  pages of facts and some of that is, you say agreed, and you get
23  some, you know, if they say, you know, on such-and-such a day,
24  Mr. Katz said such-and-such a thing.
25          And then your response is, no, Mr. Katz was in Rome at

1   the time.  It did not happen.  You know, how much new, you know,
2   do you get to add when you're proposing your things, because to
3   some extent, some of the issues are going to be fleshed out by
4   what they've written in the first instance.
5           So I haven't quite figured that out, even though it
6   seems to me that if -- this is what I'm thinking, but there is
7   some number like 60 percent -- if they write, you know, a
8   hundred -- well, let's make it easier.  Actually, I can't do the
9   math.
10          But that your number of new facts ought to be, you
11  know, maybe two-thirds of what they had in the first place,
12  something like that.  And then there is also the question of how
13  many pages, you know, pages or facts that you have.
14          And what I'd suggest is, in the first instance,
15  probably you all ought to try to figure that out.  And you may
16  just want to reserve that, because you've been doing this for a
17  while.
18          But I would like to have some kind of process like that
19  built in, because I will read these proposed findings of fact
20  before we have the trial, as a way of trying to figure out for
21  myself what the issues are.  And also hoping that, in fact, that
22  you'll hone in on whatever the actual major disputed points are
23  and not spend a lot of time trying to prove things that are not
24  actually in serious dispute.
25          In any event, so I'd like you to talk to each other

1   about that, and to add in something after -- either at Paragraph
2   9 or after Paragraph 9, just proposing at least a schedule for
3   doing that.
4           Like I said, you could probably figure out the quantity
5   at some later time when you have a better idea of what is
6   actually needed.
7           MS. FARNAN:  Can I question ask a question about that?
8           THE COURT:  Sure.
9           MS. FARNAN:  You said with the Pretrial Order.
10          Did you want them as an attachment to the --
11          THE COURT:  No, no.  Thank you, Ms. Farnan.
12          Actually, I would like them separate.  One thing I'm
13  trying to do, but I haven't taken any positive steps to do it,
14  is to shrink the Pretrial Orders, because most of it is useless
15  information to me, though I think it's valuable to the parties.
16          All right.
17          So the limitations on the hours of deposition
18  discovery, which are at Page 3, why -- so there's two disputes
19  here.
20          One is, how many people are you going to agree at the
21  beginning -- you have 14 hours of exciting depositions as
22  opposed to seven.
23          I take it you're talking about how long you're going to
24  depose each others principles?  That's who you want to be doing
25  14 hours of torture to.

1           MR. MCMILLIN:  Well, we had suggested four, because
2    there are four individual defendants who anticipated the
3    plaintiffs might want more time with the four named defendants.
4    That's why we suggested four.
5           And with the executives on the other side who are
6    responsible for the deal may want more time as well.
7           MS. GOLDSTEIN:  From our perspective, your Honor, there
8    are more than four.  There are five that we would need to take
9    on the defendants side, because in addition to the three
10   individual defendants, who are former APS executives, there's a
11   fourth person who's not a defendant, whose knowledge is also
12   being attested to in the representations that are made in the
13   Merger Agreement.  That's the former General Counsel of the
14   company.  So her testimony would be as central as the four
15   defendants.
16          Conversely, on our side, there were really only three
17   people who were involved in the negotiations.
18          Our chairman, CFO, and General Counsel.  And we would
19   expect those are the three that the defendants would want to
20   devote 14 hours of depositions too.
21          THE COURT:  So here's what I'm going to suggest, which
22   is, I take it these depositions are probably ones that are more
23   than a year in the -- or depending on what the schedule is, I
24   guess -- but these are things that are going to be done near the
25   end of fact discovery, right?

1    MS. GOLDSTEIN: Certainly after the document discovery
2    was substantially complete. We may want to take them sooner in
3    the deposition period rather than later.
4    THE COURT: Okay. I'm all in favor of not waiting
5    until the last four days to do this, especially if you are
6    trying to do eight days worth.
7    So what I'd suggest is, what I would like to do is just
8    delete your proposed sentence of four or five. And when you get
9    to that point, because I guess the rules say you're not supposed
10   to do seven without my permission, or more than seven without my
11   permission.
12   If you decide that you want to be spending that amount
13   of time on each other's employees, and if this former General
14   Counsel is somebody who's no longer working for either side,
15   then this person is only as seven hours, okay?
16   MS. GOLDSTEIN: Okay.
17   THE COURT: Okay. But if you want to depose each
18   other's executives, you know, you can just file a stipulation
19   and I will sign it, but just make sure it's the defendants and
20   your employees.
21   I'd rather not set out with the idea that that is
22   what's going to happen.
23   Do you understand what I'm saying?
24   MS. GOLDSTEIN: So take out the sentence and replace it
25   with something that --

1                THE COURT:  No.  Just leave it blank.  Just cross it
2     out.  And when the time comes, and you want to be doing that,
3     just, you know, submit something that I can just so order
4     letting you do that.
5                I presume, one way or the other, it's going to be by
6     agreement as to -- on a one-for-one basis, but see what you need
7     before setting that up.
8                So the amount of time that you've asked for total
9     depositions --
10               MS. GOLDSTEIN:  If I could, your Honor, at a minimum, I
11    would think that for the individual defendants that we have, as
12    the plaintiff with the burden here, should be able to go beyond
13    seven hours.
14               THE COURT:  That's the reason why the rules say seven
15    hours.  That's where we start.
16               Every plaintiff has the burden, okay?
17               So there's an awful lot of hours for deposition
18    discovery listed here.
19               Why is that?
20               MR. MCMILLIN:  Your Honor, we think that this case is
21    going to be one that involves a great deal of third-party
22    discovery.  The allegations in the Complaint are that my clients
23    committed fraud with respect to over 20 individual state
24    contracts with different state Medicaid agencies.
25               They allege fraud in Pipelines, a future business, that

1    involve several dozen more perspective contracts with different

2    state agencies.  And we think that in order to do discovery to

3    prove up that there wasn't fraud with respect to those

4    contracts, it will require both document discovery and

5    potentially depositions of people from the various state

6    agencies that were involved, which would multiply it beyond your

7    typical employees of the plaintiff and defendant.

8              MS. GOLDSTEIN:  There certainly will be third-party

9    discovery, but we dispute that it's going to be of the magnitude

10   that Mr. McMillin has suggested.

11             There are only ten actual customer contracts that are

12   identified in the Complaint.  The other nine customers who are

13   named in the Complaint are actually prospective customers who

14   were identified in the pipeline.  That they didn't have

15   contracts with APS at the time and they never gave contracts to

16   APS.

17             So for those nine actually it seems unlikely that

18   they're going to provide any helpful testimony to the

19   defendants, because there never was a contractual relationship

20   there.

21             But that being said, we know who these entities are.

22   Subpoenas can go out fairly promptly.  So there is no -- we can

23   limit the depositions to one per entity, so that shouldn't take

24   that amount of time.

25             THE COURT:  Well, so you proposed 280 hours, which by

1    my count is 40 people, assuming you do them all for seven hours.

2              Is that the kind of number of people, including, you

3    know, some number of, because I see you have experts in here,

4    you got some employees, presumably, that's what you're thinking?

5              MR. MCMILLIN:  From our perspective, we're thinking of

6    different categories of witnesses.

7              So there are third parties, which we think there would

8    be in excess of 20 depositions of state party agencies.

9              Also, they are both employees of the UAM who worked on

10   the transactions that we would need to depose.

11             And, also, we don't own APS any more.  In fact, we

12   don't think they own APS any more.  So those third-party

13   witnesses, all the employees of the company, are to winds and

14   will have to be deposed.

15             And that's why we were thinking it might end up being

16   40 to 50 depositions by the time we get through all three of

17   those buckets from our side.

18             MS. GOLDSTEIN:  There's going to be a fair amount of

19   overlap in those depositions.  We agree that the former APS

20   employees, a certain number of them will need to be deposed.

21             Probably somewhat a few of them than what Mr. McMillin

22   anticipates, because the more senior executives had

23   responsibility for numerous contracts and we will want to take

24   those depositions as well.

25             So the total number of depositions, the number of hours

1   is going to be split by the two sides in taking the depositions.

2   THE COURT: Okay. Well, so what you're saying is,

3   let's assume you have a contract with the state. You're both

4   interested in finding out whether it was or was not a contract.

5   And, if so, when it was -- you know, whatever it was to resolve

6   this pipeline issue.

7   If you depose this person for five hours, you imagine

8   that both sides actually, because almost for sure none of these

9   people will be available for trial, both sides are going to be

10  wanting to depose essentially the same people?

11  MS. GOLDSTEIN: Correct. Correct, your Honor.

12  MR. MCMILLIN: Certainly, I think there will be some

13  overlap.

14  I also think we may have former employees that we think

15  would be more beneficial to us to depose than they would.

16  So while there is some overlap, I think it's unique to

17  both sides.

18  THE COURT: Okay. Well, so, I'm going to -- actually,

19  just remind me -- so what was the purchase price of the APS?

20  MS. GOLDSTEIN: $223 million.

21  THE COURT: Okay.

22  MS. GOLDSTEIN: And it was sold for $35 million last

23  year.

24  THE COURT: Okay. All right.

25  Well, It does seem to me that -- it seems to me 320 is

1    ridiculously high.  280, maybe that's high, too.

2             How about 240 hours?

3             And I think that was all that I was planning on

4    resolving, because I think the rest of it is a schedule that you

5    could work out to reach the end dates that I have set.

6             MR. MCMILLIN:  I think that's feasible, your Honor.

7             Obviously, if we have the end date from you, with the

8    exception of the fact discovery deadline, we didn't have a

9    materially different dates, you know, time --

10            MS. GOLDSTEIN:  We plan on --

11            MR. MCMILLIN:  I'm happy to work with Ms. Goldstein to

12   see if we can't hammer out those interim dates.

13            THE COURT:  All right.

14            Is there anything else that you want to talk about

15   while we're here?

16            MS. GOLDSTEIN:  I have a question.  I wasn't completely

17   clear on the motion.  Not the deadlines.  But what you want in

18   terms of Dispositive Motions versus Dauberts.

19            THE COURT:  I don't really care at that time.  We tend

20   to talk about Dispositive Motions as including Daubert Motions.

21            So what -- so I don't care if you file one motion in

22   one 20 page brief or eight motions in one 20 page brief.

23            But the main point is, one 20 page brief.

24            MS. GOLDSTEIN:  The Dispositive or Daubert is one --

25            THE COURT:  For one, yes.

1                MS. GOLDSTEIN:  -- for one motion.

2                THE COURT:  Yes.

3                MS. GOLDSTEIN:  And in terms of the timing of that,

4       vis-a-vis the proposed findings of fact process, it strikes me

5       that going through the proposed findings of fact process may

6       lead the parties to resolutions that would be helpful in a

7       Dispositive Motions context?

8                THE COURT:  Well, that's something you can talk about

9       between yourselves, if you want.  I just want to make sure that

10      I get the proposed findings of fact before the Pretrial

11      Conference.  And I don't actually -- so I'm not entirely sure

12      beyond that.  I think I have an idea.

13               Tell me exactly what you want?

14               MS. GOLDSTEIN:  Well, I'm thinking it would be

15      redundant to go through a Rule 56 process at one point in time

16      and then a proposed finding of fact process again at a later

17      point in time.  It seems to doing the proposed findings of fact

18      would be helpful to a Dispositive Motion practice.

19               MR. MCMILLIN:  I think what she's getting at is, if you

20      have a statement of material undisputed facts attached to your

21      Dispositive Motion, isn't that going to look a lot like your

22      proposed stipulated facts?

23               And if we can back and forth on Summary Judgment, we're

24      kind of previewing the issues that we would do in the proposed

25      findings for your Honor.

1                THE COURT:  Well, except that presumably the proposed

2     findings are about disputed facts and the Summary Judgment is

3     about undisputed facts, right?

4                MR. MCMILLIN:  That's true.

5                MS. GOLDSTEIN:  Yes.  I guess my thought was that going

6     through the one process would lead to determinations as to where

7     there were really disputes and where there weren't.  We don't

8     have to resolve that now.

9                THE COURT:  And, so, you know, certainly you all could

10    -- you know, I'm working on the basic assumption that these

11    Summary Judgment Motions aren't going to resolve anything.

12               So I haven't really been focusing too much on that.  If

13    you think it would help on them to do something to have

14    undisputed facts, you know, I understand your point.  It makes

15    sense to me.

16               If you can come up with something, that's fine.  All I

17    know is, I would like on the back end to get something along the

18    lines of what I've talked about, okay?

19               MR. MCMILLIN:  Understood.

20               MS. GOLDSTEIN:  Understood.

21               THE COURT:  All right.

22               Anything else?

23               MR. MCMILLIN:  No, your Honor.

24               MS. GOLDSTEIN:  No, your Honor.

25               THE COURT:  Well, thank you.

1          Mr. Rorhbacher, right?

2          MR. RORHBACHER:  Yes, Judge.

3          THE COURT:  Okay.  I keep seeing you, but I don't see

4  you for long enough to get it fixed into my brain.

5          So in due course you'll submit a revised version of

6  this and I will sign it.

7          Thank you.

8          MS. GOLDSTEIN:  Thank you, your Honor.

9          MR. MCMILLIN:  Thank you, your Honor.

10         (The proceedings adjourned at this time.)

11                       * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25